HARRIS v. BROWN.

1. FRAUDS, STATUTE OF—MEMORANDUM—STATUTES.

It was a sufficient memorandum of sale, under the statute of frauds, to give the names of the parties, a description of the land to be conveyed, the consideration and times when payable, and date the parties were to occupy the premises, being signed by both grantor and grantee and described as "contract for warranty deed."

2. VENDOR AND PURCHASER—FORECLOSURE OF VENDOR'S LIEN—LAND CONTRACT—SPECIFIC PERFORMANCE.

Where complainant, in a bill to foreclose a contract for the sale of land, had sold to his sister an undivided half of premises to be occupied jointly by both parties, under a contract by virtue of which the defendant paid down a stated sum and agreed to assume a mortgage upon the premises, her default in failing to pay or arrange for the payment of the mortgage at maturity justified the foreclosure of complainant's lien as vendor, and the court will not refuse him relief, as in case of a suit for specific performance, on the ground of inequitable conduct in certain personal contentions and disputes arising between them.

Appeal from Muskegon; Sessions, J. Submitted June 19, 1912. (Docket No. 52.) Decided October 1, 1912.

Bill by Thomas J. Harris against Etta Brown to foreclose a vendor's lien. From a decree for complainant defendant appeals. Affirmed.

*William Carpenter*, for complainant.

*R. J. Macdonald* (*W. H. Simpson* and *James E. Sullivan*, of counsel), for defendant.

BIRD, J. The complainant filed his bill of complaint to foreclose a vendor's lien on certain premises which he sold to defendant on the following agreement:

"January 1, 1910, Contract for Warranty Deed.

Made between T. J. Harris of Oklahoma City, Oklahoma, and his sister, Mrs. Thomas Brown, * * * one undivided half interest in house and lots 237 W. Clay avenue and Sixth streets, known as Governor Holt's Residence, Muskegon, Michigan. Consideration three thousand ($3,000) dollars and one-half of the expense of records and perfecting title of said property by T. J. Harris, the purchase price three thousand ($3,000) dollars is to be paid seven hundred dollars ($700) on March 15, 1910, and assume mortgage on property of two thousand three hundred ($2,300) dollars with interest from February 1, 1910. We are to take possession March 15, 1910, and occupy property together and agree not to rent or sell interest in property without written consent of the other party herein.

[Signed]        "T. J. HARRIS.
                "MRS. THOMAS BROWN."

The defendant answered, denying most of the material allegations in the bill and setting up several grievances against the complainant, who is her brother.

It appears that after the contract was made the defendant complied with its terms in making payment of the item of $700 and in taking care of one-half the expense of perfecting the title. She failed to pay or assume the mortgage; but when it was refunded by complainant she paid the accrued interest thereon. After this they fell into serious disagreements, and defendant did nothing further in compliance with its terms. The testimony shows that their understanding of the contract was substantially alike, save in the matter of making payments on the mortgage. Defendant claims she was to pay only $500 per year on the mortgage; but it does not appear that she made any effort to pay that or any other amount. It is quite likely that no differences would have arisen over the contract, had not their social and business relations become so strained.

The point is made against the contract that it is not definite enough to answer the requirements of the statute of frauds. We do not think the contract is open to this objection. The parties, the consideration, and how and

when it shall be paid, the description of the premises, and the date of taking possession, are all made clear by the terms of the contract; and it is in writing and signed by both parties.

Counsel erroneously assume that the bill is filed to enforce the contract specifically, and argue that, as it is within the discretion of the trial court whether he will enforce it, he ought not to do so in this case because of complainant's treatment of defendant. We are quite convinced from the record that this brother and sister had been living for some time on very bad terms; but we are unable to see the connection between their personal quarrels and their relative rights under the contract. It is the latter that we must deal with. They made an agreement, reduced it to writing, and defendant partially complied with its terms. She afterward refused to fulfill. No adequate reason is given for such refusal, and we think the trial court was right in decreeing a foreclosure of complainant's lien; and its decree will be affirmed. *Fitzhugh* v. *Maxwell*, 34 Mich. 138; *Midland County Sav. Bank* v. *T. C. Prouty Co.*, 158 Mich. 656 (123 N. W. 549, 133 Am. St. Rep. 401).

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.